UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

CRIMINAL NO. 11-009-JJB

VERSUS

SHEDRICK McKENZIE, ET AL.

## RULING ON MOTION TO DISMISS INDICTMENT

The matter before the Court is a motion to dismiss the indictment filed by defendant Henry Jones (Doc. 134) and adopted by the other defendant, Chikenna Jones (Doc. 145).[1] Jones argues that both the Double Jeopardy Clause of the Constitution and Rule 8 of the Federal Rules of Criminal Procedure bar charging him with the two counts of conspiracy contained in this indictment. He urges that his prior conviction before this Court on conspiracy charges in *United States v. Ngari, et al.*, No. 10-60-JJB, renders this indictment multiplicitous because only a single conspiracy existed, not the multiple conspiracies as alleged in the indictments in that case and this case. The government, of course, disagrees. (Doc. 141). Oral argument was held on November 1, 2011. For the following reasons, the Court DENIES the motion.

I.

In the *Ngari* case, the government charged Jones with the same two counts contained in the instant indictment—violations of 18 U.S.C. §§ 1349 and 371 for conspiracy to commit health care fraud and conspiracy to defraud the United States and to pay and receive health care kickbacks, respectively. *Ngari* involved a scheme centered around Unique Medical Solution, Inc. ("Unique"), a company owned and operated by N. Felix Ngari. Ngari would engage people like Ernest Payne and Henry Jones to serve as patient recruiters, who would find Medicare

---

[1] All mentions of "Jones" in this ruling refer to Henry Jones alone, unless otherwise noted.

1

beneficiaries and refer them to complicit physicians such as Dr. Sofjan Lamid. Lamid and others would conduct cursory examinations of these patients, write medically unnecessary prescriptions for durable medical equipment like power wheelchairs, and then provide the patient information to Ngari and his recruiters, who would submit these fraudulent claims to Medicare. Because Ngari owned the company under whose auspices the fraudulent claims were submitted and the kickbacks were paid, he may fairly be deemed the central figure in that conspiracy. He maintained the Medicare provider number and had sole authority over Unique's bank account. Stretching the dates in the indictment as far as they go, the conspiracy in that case began in December 2003 and ended in March 2009.

In this case ("the *McKenzie* case"), the government alleges a conspiracy which dates from October 2004 until October 2010. The scheme in this case mirrors the structure of Unique in the *Ngari* conspiracy. Shedrick McKenzie allegedly owned and operated McKenzie Healthcare Solutions, Inc. ("McKenzie Solutions"). Instead of Dr. Lamid, a physician named Jo Ann Francis was alleged to have written the fraudulent prescriptions, and instead of Henry Jones and Ernest Payne, Dr. Francis allegedly interacted with patient recruiters Mary Griffin and Stephanie Dangerfield. The government does not allege Henry Jones and his wife, co-defendant Chikenna Jones, joined the conspiracy until on or around January 2010. At that time, the government alleges the Joneses took over effective operating control of McKenzie Solutions. This time, instead of serving as a patient recruiter, Henry Jones joins the on-going *McKenzie* conspiracy as a central player, albeit for a short period of time at the tail end of the conspiracy. Chikenna Jones allegedly obtained joint authority with McKenzie over the corporate banks accounts of McKenzie Solutions. She and her husband, along with McKenzie, then allegedly transferred and

disbursed money from the bank accounts to the other participants in the *McKenzie* conspiracy. They also allegedly submitted, or caused to be submitted, fraudulent Medicare claims.

II.

Whether Jones' argument may properly be characterized as an objection to multiplicitous charges under Fed. Rule. Crim. P. 8 or an argument against double jeopardy, the thrust of his contention is that the *Ngari* case and the current case both involve a single conspiracy.[2] As such, Jones contends the current indictment cannot stand because it impermissibly charges him with conduct that he has already been tried and convicted for in *Ngari*. The test for the existence of a single or multiple conspiracies—whether couched in terms of double jeopardy or multiplicity— is a familiar one. As the Supreme Court in *Braverman v. United States* noted:

> the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects. Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes.

317 U.S. 49, 53 (1942). A separate agreement is therefore the touchstone for identifying a unitary or separate conspiracy. The Fifth Circuit has not remained silent on the issue. Five non-dispositive factors, which must be considered in combination with one another, govern whether a unitary or separate conspiracy existed. The Court must consider the so-called *Marable* factors, which measure the allegedly separate conspiracies for overlap of:

(1) Time;
(2) Identity of persons allegedly acting as co-conspirators;
(3) Statutory offenses charged in the separate indictments;

---

[2] While Jones also points to similarities in a third indictment, *United States v. Jones, et al.*, No. 10-104-JJB, presently pending before this Court, the Court cannot take up that argument. First, the Double Jeopardy argument presented here only relates, of course, to his conviction in the *Ngari* matter, and thus the content of the *Jones* indictment is irrelevant to that inquiry. Second, if Jones thinks the facts in the *Jones* indictment overlap with the facts here, the proper place to raise that contention is in the *Jones* case itself, not on the eve of trial in this case. The Court therefore restrains itself to the only pressing matter *in this case*, which is whether the instant indictment realleges the same conspiracy as presented in *Ngari*.

3

(4) Overt acts charged by the government, or any other description of offense charged which indicates the nature and scope of activity which the government sought to punish in each case; and

(5) Location where the events took place.

*United States v. Rabhan*, 628 F.3d 200, 205 (5th Cir. 2010) (citing *U.S. v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978)).

The government does not contest that the third and fifth *Marable* factors are generally met in this case, and thus the Court's inquiry centers on the first, second, and fourth *Marable* factors.

A. The First *Marable* Factor – Time

The *Ngari* conspiracy took place, roughly, between late 2003 and early 2009. Jones is not alleged to have joined the conspiracy in this case until early 2010. While the overall conspiracies in both cases have substantial temporal overlap, Jones' alleged participation in this case does not overlap with the *Ngari* conspiracy. Moreover, because the instant conspiracy is alleged to have begun in October 2004 and, at least in the beginning, ran without Jones, the Court finds there is not substantial overlap of time between the two conspiracies as they relate to Jones. A discussion of the other factors bolsters this finding.

B. The Second *Marable* Factor – Persons Acting as Co-Conspirators

Other than Jones himself, a comparison of the indictments results in no overlap of co-conspirators. The government charged Ngari, Lamid, Payne and Jones in the *Ngari* case, even though there were several other unindicted co-conspirators, including another prescribing physician and a government informant. In this case, the government charged McKenzie, Henry Jones, Chikenna Jones, Griffin, Dangerfield, and Francis. Neither McKenzie nor the patient recruiters Griffin and Dangerfield are alleged to have had any connection with the original *Ngari* conspiracy. Similarly, Dr. Francis is not alleged to have been connected to the *Ngari* matter.

4

"[T]he overlap of central characters between cases is even more important than the number of overlapping characters...." *Rabhan*, 628 F.3d at 207. Implicit in the recognition that centrality of overlapping characters means more than number of overlapping characters is an ancillary recognition that roles matter in conspiracies. The Court must necessarily look at the role each co-conspirator played to evaluate the character's centrality in each alleged conspiracy. Here, Henry Jones and his wife Chikenna Jones arrived late to the on-going conspiracy to use McKenzie Solutions to submit fraudulent Medicare claims. While the indictment shows that, once joined, the Joneses played a central role in this case, Henry Jones occupied a much different—and arguably less integral—role in the *Ngari* case. There, he served only as a recruiter, a "boot on the ground" of sorts. Here, while a late-comer, he is alleged to have been more hands-on with the transfer of money and the submission of fraudulent claims from the company to Medicare. In essence, the government alleges Henry Jones transformed from employee to boss. The second *Marable* factor is therefore not met.

C. The Fourth *Marable* Factor – Overt Acts and Other Activities Sought to be Punished

The *Ngari* indictment alleged that, following the submission of medically unnecessary Medicare claims, Ngari received payment from Medicare, deposited the payment into corporate accounts for Unique, then disbursed payments to his recruiters, who in turn made payments to the prescribing physicians. The instant indictment alleges that McKenzie occupied the same role in this conspiracy that Ngari did in *Ngari*, but with the additional help of the Joneses once they joined the conspiracy on or around January 2010.

Viewed from a bird's-eye level of generality, one might say the two schemes are so similar as to satisfy the fourth *Marable* factor. But then again, almost every Medicare fraud conspiracy would appear similar when viewed simply as a plan to rip off Medicare by submitting

medically unnecessary claims in order to reap illicit profit. While the mechanics of the conspiracy are similar, crucial differences remain. For one, as noted above in discussing the other *Marable* factors, the timeline differs as it relates to the Joneses' participation in the different cases, just as the cast of characters differs in substantial part from *Ngari* to this case. Second, and just as importantly, different corporate forms are used to allegedly perpetuate the conspiracy. Unique was owned by Ngari, while McKenzie Solutions was owned by McKenzie and later co-operated and managed by the Joneses. Thus, viewed at a more discerning level of generality, the actual agreements which form the basis of the conspiracies are quite different. Using different companies, run by different people, each plan yielded Medicare payments which were deposited into different corporate bank accounts, the disbursements from which were handled by different people.

    D. Overlapping Evidence

The defendants point to the government's increasing use of evidence once thought extrinsic and thus governed by Fed. Rule Evid. 404(b), but now characterized as "inextricably intertwined" with this case, and argues that emerging realization points to the existence of a single, unitary conspiracy running through all three cases in which Henry Jones has been charged. It may well be true that, at some point, an overwhelming use of inextricably intertwined evidence would inevitably lead to the conclusion that only a single conspiracy existed. But as the government points out, there is a crucial difference between merely using the same evidence to show different conspiracies and that evidence actually showing only a single conspiracy. Just as a single conversation might touch on multiple topics, so too might a single piece of evidence show multiple agreements and, hence, multiple conspiracies. Jones' argument

6

that the use of intertwined evidence leads *ipso facto* to the conclusion that only one conspiracy existed is without merit.

III.

Because the Court finds separate agreements governed the actions in *Ngari* and this case, the Court also finds separate conspiracies existed. It cannot escape notice that, at the time the Joneses are alleged to have joined the conspiracy charged in this case, the conspiracy had been on-going for several years. The Court is aware of no jurisprudence which would effectively allow Jones to import the conspiratorial agreement from *Ngari* into the already existent and on-going conspiracy in this case. Moreover, the *Marable* factors support the conclusion that separate agreements existed between, on the one hand, Ngari and his confederates, and on the other hand, McKenzie and his confederates. Henry Jones played a much different role in this case at a much later point in time. The knowledge and methods he learned in the *Ngari* scheme may or may not have aided the acts he is charged with performing in this case, but it is his agreement to join McKenzie's on-going conspiracy that matters here.

As the Court has already found in a previous ruling in the *Ngari* matter, (Doc. 179 in No. 10-60-JJB), the indictment here does not internally duplicate conspiracy charges because the two counts satisfy the test from *Blockburger v. United States*, 284 U.S. 299 (1932). Because the Court finds that multiple conspiracies existed, the current indictment does not violate the rule against multiplicity. Thus, because Henry Jones was tried and convicted in *Ngari* on separate charges relating to a separate conspiracy, the Double Jeopardy Clause of the Fifth Amendment has not been violated. The Court therefore DENIES the motion to dismiss the indictment. The trial shall proceed as scheduled.

7

## ORDER

For the written reasons assigned, the motion to dismiss the indictment (Doc. 134) is hereby DENIED.

Trial shall proceed as scheduled.

Signed in Baton Rouge, Louisiana, on November 2, 2011.

———————————————
JAMES J. BRADY, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA